STATE OF CONNECTICUT *v.* BIPIN SHAH
(AC 32704)

Gruendel, Robinson and Schaller, Js.

Argued October 14, 2011—officially released April 3, 2012

*Richard S. Cramer*, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, former state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellee (state).

### Opinion

SCHALLER, J. The defendant, Bipin Shah, appeals from the judgment of conviction, rendered after a trial to the court, on two counts of attempt to commit risk of injury to a child in violation of General Statutes §§ 53a-49 (a) (2) and 53-21 (a),[1] and one count of attempt to entice a minor in violation of General Statutes §§ 53a-49 (a) (2) and 53a-90a (a). On appeal, the defendant claims that the court (1) concluded without sufficient

_____

[1] Specifically, the defendant was charged with one count of attempting to do an act likely to impair the health or morals of a child under the age of sixteen years in violation of § 53-21 (a) (1) and one count of attempting to have sexual contact with a child under the age of sixteen years in violation of § 53-21 (a) (2).

evidence that he had taken a substantial step toward the commission of these crimes, (2) concluded without sufficient evidence that he possessed the requisite level of intent and (3) abused its discretion by admitting copies of certain Internet chat transcripts into evidence. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to the present appeal. On January 23, 2008, Ron Blanchard, a detective in the Naugatuck police department, entered into an Internet chat room using the screen name "Samantha_Miller13."[2] On that date, the defendant engaged Miller in conversation using the screen name "Look It's Me." From January 23, 2008, to the date of his arrest on April 5, 2008, the defendant contacted Miller in this manner on more than one dozen occasions.[3]

At the outset of the first conversation, the defendant asked Miller where she lived and how old she was. Miller responded that she was living near Waterbury and was fourteen years old. After a brief discussion regarding Miller's previous sexual encounters, the defendant expressed a desire to kiss Miller. A few minutes later the defendant asked, "so if [you] decide to meet up . . . when [are you] available?" Miller asked, "[you aren't] freaked out of my age?" The defendant replied, "no . . . in fact I would love to meet [you]." The defendant then inquired as to the size of Miller's brassiere and expressed a desire to touch Miller's breasts.

---

[2] Although "Samantha Miller" is a purely fictional character, for simplicity, we use the name "Miller" to refer to Blanchard when using this persona. See *State* v. *Nero*, 122 Conn. App. 763, 766 n.3, 1 A.3d 184 (2010).

[3] The state submitted transcripts of these online chats into evidence at trial. The court explicitly found that these transcripts contained the conversations that occurred between Miller and "Look It's Me." The court also found that the state had proven beyond a reasonable doubt that the defendant was "Look It's Me." These findings are not contested in the present appeal.

On January 24, 2008, the defendant contacted Miller regarding the possibility of meeting the following day. When Miller asked what the two would do, the defendant stated that he would like to kiss her genitals. Shortly thereafter, the defendant stated, "[I] guess [you are] not ready yet," and ceased sending messages.

On January 28, 2008, the defendant initiated another chat. After Miller renewed the question of why he wanted to meet, the defendant said, "to [have] fun what else." When Miller asked the defendant to explain what he meant by that, the defendant stated, "I guess that['s] why we didn't meet," and ended the conversation.

On February 12, 2008, the defendant started another chat. During this conversation, the defendant asked Miller if she had a boyfriend and then stated that if they ever met in person he would want to kiss her. Shortly after making this statement, the defendant ceased sending messages.

On February 21, 2008, the defendant contacted Miller and again expressed a desire to meet. After a brief discussion about the possibility of going to a movie theater, the following colloquy occurred:

"Look It's Me: would [you] come with me to a motel room?

"Samantha Miller: really

"Samantha Miller: [you] would want [to]

"Look It's Me: why not if [you are] willing

"Samantha Miller: sounds fun

"Look It's Me: then tell me where and when we meet

"Samantha Miller: [you] serious

"Look It's Me: yes I am

"Samantha Miller: [you know] I never did anything

"Look It's Me: yes I know . . . there is a [first] time for everything"

The defendant indicated that he would be willing to drive from his home in White Plains, New York, to Naugatuck to meet Miller. The defendant told Miller that "if we meet up and go to a motel" he would "kiss [her and squeeze her] and [a] lot more." The defendant then said that he was concerned that someone at a local motel could recognize Miller and suggested that they go to Danbury instead. The defendant also expressed an interest in taking photographs of Miller without clothing on. Shortly thereafter, the conversation ended.

More than one month later, on the afternoon of March 28, 2008, the defendant contacted Miller and expressed an interest in meeting with her the following day. Although the defendant initially suggested they go to a mall, he eventually asked Miller if she would like to go to a motel. Miller agreed to this proposition, and the two made plans to meet the following day at 12 p.m. at a store located at 727 Rubber Avenue in Naugatuck. Miller told the defendant that she would be wearing jeans and a blue coat. The defendant told Miller that he would be driving a white truck. Later in the conversation, the defendant again asked Miller about her previous sexual encounters and inquired whether she ever touched her own genitals. That evening, the defendant contacted Miller again. After a brief conversation, the defendant indicated that he would like to purchase a microphone and speakers for Miller's computer.[4] The defendant told Miller that they might not be able to go to a motel because it was "too risky." The defendant then told Miller that he had to leave and ended the conversation.

[4] The defendant had previously attempted to communicate vocally with Miller over the Internet. Miller informed the defendant that her computer was not equipped with a microphone or speakers.

The defendant did not appear at the prearranged meeting place on March 29, 2008. The defendant sent a message to Miller that afternoon stating that he did not come because he was busy with errands. The following day, March 30, 2008, the defendant apologized to Miller for not meeting with her as planned and stated that he was "scared . . . ." On the afternoon of Tuesday, April 1, 2008, the defendant suggested that the two meet the following Saturday. Miller agreed. Later that evening, the defendant reiterated his desire to "kiss" and "squeez[e]" Miller and suggested that the two shower together at a motel.

On Friday, April 4, 2008, the defendant contacted Miller again. During this conversation, he asked Miller to call him "uncle" when they met. The two then confirmed their plans to meet the next day at 11 a.m. at 727 Rubber Avenue. Miller told the defendant that she would be wearing jeans and a blue coat. The following morning, the defendant sent a message to Miller, stating, "[I]'ll see [you] in a few minutes . . . ." Soon thereafter, the defendant arrived at the prearranged meeting place and was arrested by police.[5]

The substitute information filed by the state on June 18, 2010, charged the defendant with one count of attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-71 (a) (1), two counts of attempt to commit risk of injury to a child in violation of §§ 53a-49 (a) (2) and 53-21 (a), and one count of attempt to entice a minor in violation of §§ 53a-49 (a) (2) and 53a-90a (a). After a trial to the court, the defendant was found not guilty of attempted sexual assault in the second degree, but was convicted on each of the remaining charges. On

---

[5] After the defendant had driven through the parking lot and stopped in front of the store multiple times, Blanchard approached the defendant's vehicle and asked if he was lost. The defendant responded that he was looking for Samantha Miller.

September 15, 2010, the court imposed a total effective sentence of five years imprisonment, execution suspended after six months, ten years of probation and a fine of $5000. This appeal followed.

I

The defendant first claims that traveling to the prearranged meeting place in Naugatuck does not constitute a substantial step toward the commission of risk of injury to a child or enticing a minor and, therefore, there is insufficient evidence to support his conviction of having attempted to commit those crimes pursuant to § 53a-49 (a) (2). We disagree.

We begin our analysis by setting forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require

acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 76–77, 993 A.2d 970 (2010).

In the present case, the defendant was charged with two counts of attempt to commit risk of injury to a child in violation of §§ 53a-49 (a) (2) and 53-21 (a)[6] and one count of attempt to entice a minor in violation of §§ 53a-49 (a) (2) and 53a-90a (a).[7] Section 53a-49 (a)

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony for a violation of subdivision (1) . . . and a class B felony for a violation of subdivision (2) . . . ." The defendant was charged with one count of violating § 53-21 (a) (1) and with one count of violating § 53-21 (a) (2).

[7] General Statutes § 53a-90a (a) provides in relevant part: "A person is guilty of enticing a minor when such person uses an interactive computer service to knowingly persuade, induce, entice or coerce any person under sixteen years of age to engage in prostitution or sexual activity for which the actor may be charged with a criminal offense. . . ."

states in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." Section 53a-49 (b) states in relevant part: "Conduct shall not be held to constitute a substantial step . . . unless it is strongly corroborative of the actor's criminal purpose. . . ."

"[A] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime, and thus the finder of fact may give weight to that which has already been done as well as that which remains to be accomplished before commission of the substantive crime. . . . In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 180–81, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).

In *State* v. *Nero*, 122 Conn. App. 763, 766–73, 1 A.3d 184 (2010), the defendant had engaged in various online conversations of a sexual nature with an undercover police officer posing as a fifteen year old girl. The defendant subsequently traveled to a prearranged meeting place where he was arrested by police. Id., 773. In that case, the defendant argued that the "sexual talk on the Internet and driving to meet [the child] at the [prearranged place]" did not constitute a substantial step toward the commission of sexual assault in the second

degree. Id., 781. The court in *Nero*, citing our Supreme Court's holding in *State* v. *Sorabella*, supra, 277 Conn. 182, held that "the conduct of a suspect who, for the purpose ultimately of having sex with a person whom the suspect believes to be a child, travels to a prearranged location to meet that child, is sufficient to constitute a substantial step in furtherance of the planned sex crime." (Internal quotation marks omitted.) *State* v. *Nero*, supra, 782.

In the present case, the defendant engaged in a series of illicit Internet chats with a person whom he believed to be a fourteen year old girl. During the course of these conversations, the defendant sought to persuade the child to engage in various types of sexual behavior with him at a motel. Specifically, the defendant expressed a desire to fondle the child's breasts, kiss her genitalia, shower with her and take photographs of her without her clothing on. After having engaged in these conversations, the defendant traveled to a prearranged place with the intent of meeting that child. We conclude, based on *Nero*, that when these facts are viewed in the light most favorable to sustaining the court's finding of guilty, a reasonable finder of fact could determine that the defendant had taken a "substantial step" toward violating both §§ 53-21 (a) and 53a-90a (a).

II

The defendant next claims that the record contains insufficient evidence to support the court's conclusion that he possessed the intent required for conviction of attempt to commit risk of injury to a child and attempt to entice a minor.[8] We disagree.

In order to be convicted of having attempted to commit a crime, "[t]he defendant . . . must have possessed

---

[8] In addressing the defendant's second claim, we again apply the standard of review governing claims of insufficient evidence set forth by our Supreme Court in *State* v. *Butler*, supra, 296 Conn. 76–77.

the specific intent to commit the underlying crime. . . .
[T]he attempt is complete and punishable, when an act
is done with intent to commit the crime, which is
adapted to the perpetration of it, whether the purpose
fails by reason of interruption . . . or for other extrin-
sic cause." (Internal quotation marks omitted.) *State* v.
*Fauntleroy*, 101 Conn. App. 144, 149–50, 921 A.2d 622
(2007). "It is well established that [t]he question of
intent is purely a question of fact. . . . The state of
mind of one accused of a crime is often the most signifi-
cant and, at the same time, the most elusive element
of the crime charged. . . . Because it is practically
impossible to know what someone is thinking or
intending at any given moment, absent an outright dec-
laration of intent, a person's state of mind is usually
proven by circumstantial evidence. . . . Intent may be
and usually is inferred from conduct. . . . [W]hether
such an inference should be drawn is properly a ques-
tion for the [finder of fact] to decide." (Internal quota-
tion marks omitted.) *State* v. *Smith*, 99 Conn. App. 116,
133, 912 A.2d 1080, cert. denied, 281 Conn. 917, 917
A.2d 1000 (2007).

The defendant argues that this court should distin-
guish between mere expressions of the defendant's sex-
ual interests and more direct statements of actual
intent. As previously stated, however, an outright decla-
ration of intent is not required in order to sustain the
defendant's conviction. Id. The defendant also argues
that the evidence contained in the record indicates that,
on the date of his arrest, he merely wanted to go shop-
ping with Miller and that he had no intent to take the
child to a motel. In support of this assertion, the defen-
dant points to (1) the message sent to Miller on March
28, 2008, which states that going to a motel might be
"too risky" and (2) the absence of any physical evidence
indicating that he had tried to procure such lodging.
These arguments are unpersuasive. First, on April 1,

2008, four days after he had told Miller that going to a motel might be "too risky," the defendant suggested that the two should "take a shower together in the motel." Second, although the defendant is correct to note that there was no physical evidence indicating that he had reserved a motel room, the absence of such evidence does not foreclose the possibility that he intended to engage in acts of a sexual nature with Miller.[9] See *State* v. *Nero*, supra, 122 Conn. App. 783 n.15 (affirming defendant's conviction of attempt to commit sexual assault in second degree despite absence of incriminating physical evidence in his possession). The evidence contained within the record, when viewed in the light most favorable to sustaining the court's finding of guilty, was sufficient to allow a reasonable finder of fact to conclude that the defendant intended to violate both §§ 53-21 (a) and 53a-90a (a).

## III

Finally, the defendant claims that the court abused its discretion by admitting into evidence chat transcripts without authenticating them as computer generated evidence pursuant to *State* v. *Swinton*, 268 Conn. 781, 847 A.2d 921 (2004). We disagree.

We begin by setting forth the applicable standard of review. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings

[9] On the date of the defendant's arrest, police conducted a search of his vehicle. Affixed to the windshield of the vehicle was a global positioning system that indicated that the defendant's destination was 727 Rubber Avenue in Naugatuck. In the backseat of the vehicle police also found a computer microphone and headphones. Finally, in a compartment between the front two seats, police found a digital camera. No other physical evidence was discovered.

is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 670–71, 31 A.3d 1012 (2011).

The following additional facts are relevant to this claim. At trial, the state sought to admit printed transcripts of approximately fifteen separate online chat sessions between Miller and the defendant. Blanchard, the law enforcement officer who posed as Miller, testified that the information contained within the transcripts was consistent with the conversations he had previously had with the defendant. Blanchard also testified that these transcripts were created by transferring data from an online archive maintained by the host of the Internet chat room to a word processing document on his computer.

Section 9-1 (a) of the Connecticut Code of Evidence states: "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be." This provision "requires only a prima facie showing of genuineness and leaves it to the fact finder to decide the true authenticity and probative value of the evidence." *State* v. *John L.*, 85 Conn. App. 291, 301, 856 A.2d 1032, cert. denied, 272 Conn. 903, 863 A.2d 695 (2004). Generally, this showing may be made by obtaining testimony from "[a] witness with personal knowledge . . . that the offered evidence is what its proponent claims it to be." Conn. Code Evid. § 9-1 (a), commentary.

In *Swinton*, our Supreme Court stated that "in order to lay a proper foundation for computer generated evidence, there must be testimony by a person with some degree of computer expertise, who has sufficient knowledge to be examined and cross-examined about the functioning of the computer." (Internal quotation

marks omitted.) *State* v. *Swinton*, supra, 268 Conn. 813. "This standard can generally be satisfied by evidence that (1) the computer equipment is accepted in the field as standard and competent and was in good working order, (2) qualified computer operators were employed, (3) proper procedures were followed in connection with the input and output of information, (4) a reliable software program was utilized, (5) the equipment was programmed and operated correctly, and (6) the exhibit is properly identified as the output in question." (Internal quotation marks omitted.) Id., 811–12. In *Swinton*, the court concluded that certain digitally enhanced photographs of bite marks on a murder victim constituted "computer generated evidence" after noting that the enhancement process "reveal[ed] parts of [the] image that previously were unviewable." Id., 804.

In *State* v. *Melendez*, 291 Conn. 693, 707–708, 970 A.2d 64 (2009), our Supreme Court addressed a case in which the defendant argued that the more rigorous standard set forth in *Swinton* governed the admission of a digital video disc (DVD) containing unenhanced copies of eight millimeter videotape depicting his involvement in multiple narcotics transactions. In *Melendez*, our Supreme Court noted that "[it has drawn] a distinction between technologies that may be characterized as merely *presenting* evidence and those that are more accurately described as *creating* evidence."[10] (Emphasis in original.) Id., 709–10. The court continued: "Although it is true . . . that generating [the DVD] required the use of technology, that technology, which

---

[10] In the context of digitally enhanced photographs, the court stated that "an image may be deemed to have been creat[ed] . . . when the technology used reveals details or parts of an image that were not visible prior to the technological enhancement or modification. . . . As a general matter, an image is merely present[ed] . . . when the technology used to generate it does not reveal any new or previously unviewable details." (Citations omitted; internal quotation marks omitted.) *State* v. *Melendez*, supra, 291 Conn. 710 n.21.

is widely used and readily available, involves nothing more than the reproduction of video footage from one medium to another. . . . We conclude, therefore, that compliance with *Swinton* was not a prerequisite for admission of the unmodified video clips contained on the DVD." Id., 710.

In the present case, Blanchard testified that the transcripts offered by the state accurately represent the online conversations he had with the defendant. These documents, like the DVD admitted by the trial court in *Melendez*, represent a mere unaltered reproduction of those communications. These documents do not, therefore, constitute "computer generated evidence" as that term has been defined by our Supreme Court. Consequently, the admission of these exhibits did not require the trial court to apply the heightened authentication requirements set forth in *Swinton*. Absent the application of this heightened standard, Blanchard's testimony that the information contained within the transcripts accurately represented the conversations he had with the defendant is sufficient to satisfy the authentication requirements of § 9-1. Accordingly, the trial court did not abuse its discretion in admitting these transcripts into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.