# STATE OF CONNECTICUT *v.* THOMAS ANDREW BROWN
## (AC 33969)

Robinson, Keller and Schaller, Js.

Argued April 23—officially released July 30, 2013

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Terence D. Mariani, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Thomas Andrew Brown, appeals from the judgment of conviction rendered after a trial to the court of attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-71 (a) (1).[1] On appeal, the defendant claims that the evidence was insufficient to establish that he (1) possessed the requisite level of intent and (2) had taken a substantial step toward the commission of the crime. We affirm the judgment of the trial court.

---

[1] The state, in a substitute long form information, charged the defendant with one count of attempting to commit sexual assault in the second degree in violation of §§ 53a-49 (a) (2) and 53a-71 (a) (1), one count of attempt to commit risk of injury to a child in violation of § 53a-49 (a) (2) and General Statutes § 53-21 (a) (2), and one count of attempt to entice a minor by computer to engage in sexual activity in violation of § 53a-49 (a) (2) and General Statutes § 53a-90a. The defendant does not challenge his convictions of attempt to commit risk of injury to a child or attempt to entice a minor by computer to engage in sexual activity.

The following facts are relevant to our resolution of the present appeal. On April 30, 2009, Ron Blanchard, a detective in the Naugatuck Police Department, entered into an Internet chat room using the screen name "Samantha Miller13."[2] On April 30, 2009, the defendant engaged Miller in an online conversation, lasting approximately forty-five minutes, using the screen name "Chevy c2d 1970."[3] During the first conversation, the defendant initiated a friend invite, which prompted his screen name to change to "Tom Brown." At the outset, the defendant stated that he was a twenty-one year old male and asked Miller her age and whether she was single. Miller responded that she was fourteen years old and did not have a boyfriend. Less than ten minutes into the conversation, after a very brief discussion regarding Miller's general interests, the defendant inquired into Miller's previous sexual encounters. The defendant specifically inquired as to whether Miller had touched her own genitals or engaged in cunnilingus. The defendant also stated to Miller that these sexual acts would be "more fun when a guy does it to [you]." Toward the end of the conversation, Miller told the defendant that she lived near Waterbury, and the defendant responded that he lived in Southington.

On the evening of April 30, 2009, the defendant initiated a second online conversation with Miller, which lasted approximately three hours. During this conversation the defendant again initiated a sexually suggestive conversation by inquiring as to what Miller was wearing, whether she was becoming aroused by the conversation and the size of her breasts. The defendant indicated that he would like to engage in cunnilingus with Miller

[2] Although "Samantha Miller" is a purely fictional character, for simplicity, we use the name "Miller" to refer to Blanchard when using this persona. See State v. Shah, 134 Conn. App. 581, 583 n.2, 39 A.3d 1165 (2012).

[3] Blanchard testified regarding the general substance of the online conversations he had with the defendant. Transcripts of these conversations were admitted into evidence as full exhibits, and their substance is undisputed.

and asked, "would [you] let me lick it clean for [you]?" Miller responded affirmatively "that [would] be so nice." The defendant continued the suggestive conversation, stating that he wished Miller were lying in his bed and asked whether Miller took some form of birth control or whether he would have to wear condoms. The defendant specifically stated that he did not like using condoms but that he would use them for Miller.[4]

Toward the end of this second conversation, the defendant expressed his desire to meet Miller and asked, "so when can [I] come kiss you?" The defendant suggested that he meet Miller on Tuesday, May 5, 2009, while Miller's mother was not home. Miller stated that she would leave school at 2 p.m. and that her mother would not return home from work until 9 p.m. The defendant asked Miller whether they would be alone and what she wanted to do while they were together. The defendant affirmatively stated that he would be willing to do more than just kissing if Miller would like. At this point, the defendant suggested that Miller "get some sex toys" and offered to provide them to her.

---

[4] The following colloquy occurred during the online conversation regarding the defendant's use of condoms:

"Tom Brown: so either [you] take birth control or [you] use rubbers lol
"[Samantha Miller]: [I] don't take [birth control]
"Tom Brown: [I figured] that

\*\*\*

"Tom Brown: [I] don't like [condoms] hun
"[Samantha Miller]: why
"Tom Brown: [I] don't like how they feel on me
"[Samantha Miller]: but [you] would have [to]
"Tom Brown: no we could have a baby together lol

\*\*\*

"[Samantha Miller]: no
"Tom Brown: [I'm old enough] lol but I know what we need to do baby
"[Samantha Miller]: what
"Tom Brown: I [know] I would have to use a [condom] baby

\*\*\*

"Tom Brown: I would use one for [you] baby."

On the following days, May 1 and 2, 2009, the defendant sent Miller two messages each day while she was not online, attempting to initiate a conversation; Miller did not respond to any of these messages. On May 3, 2009, the defendant began his third online conversation with Miller. The defendant again mentioned meeting Miller on May 5, 2009, and began another sexually suggestive conversation by asking Miller what type of underwear she was wearing and if she would allow him to remove it. The defendant requested that Miller wear a particular color of thong underwear to their meeting and offered to bring her the sex toys, asking if she would use them while he was present. The defendant once more expressed his desire to perform cunnilingus on Miller stating, "I [know where you] want me [to] kiss [you] . . . down there."

On May 4, 2009, while Miller was not online, the defendant sent Miller thirteen messages over the course of approximately two hours in an attempt to initiate another conversation. When Miller later responded to the defendant's messages, the two confirmed that they would meet the following day, on May 5, 2009. The defendant and Miller agreed to meet at a shopping plaza in Naugatuck, located twenty-one miles from the defendant's home, around 2 p.m. The defendant continued to express his desire to kiss Miller and suggested that they go to Miller's home after they meet. The defendant once more requested that Miller wear a particular color of thong underwear and asked whether she would show it to him and if he could take it with him. The defendant also asked Miller if she would become aroused when he kissed her on her "hip right [below] the strap for [her] panties" and stated that he would "show [her] [tomorrow]." Toward the close of this conversation, the defendant stated "we [have to] behave lol (no we [don't])" and then told Miller, "[just] no [sex though]

. . . [I] don't [know] if [you're] ready [for] that . . . [I'll] give [you] anything [you] want besides that."

On May 5, 2009, Blanchard saw the defendant's vehicle parked behind the plaza where the defendant and Miller had agreed to meet. Blanchard approached the defendant's vehicle and asked the defendant who he was and why he was parked in that location. The defendant responded that he was there to meet Miller, a fourteen year old female he had met on the Internet. Blanchard then arrested the defendant and, upon searching the trunk of the defendant's car, found the sex toys the defendant had described in his conversations with Miller. After his arrest, the defendant gave a statement to the police admitting that he and Miller had inappropriate conversations, that he agreed to meet with Miller and that he would bring the sex toys to Miller at the meeting. The court found the defendant guilty of attempt to commit sexual assault in the second degree and imposed a total effective sentence of ten years, execution suspended after eighteen months, and ten years of probation.[5] This appeal followed.

[5] In rendering judgment, the court specifically found the following: "Detective Blanchard, who [was] acting as Samantha Miller13, communicated online with the defendant for a period of time from April 30 to May 5. [Blanchard] testified about this sexually explicit content of his online conversations with the defendant, printouts of the conversations that the state introduced into evidence are part of the court file as full exhibits. They reveal that [Miller] affirmatively stated her age . . . . The defendant also expressly acknowledged that [Miller] was a minor and was fourteen years of age.

\*\*\*

"The finding is that the evidence is sufficient to establish beyond a reasonable doubt that the defendant intended to engage in sexual intercourse as defined in the statute with [Miller]. The defendant arranged to meet [Miller] in person, drove from Southington to Naugatuck on May 5, 2009, to execute the plan. The evidence clearly was sufficient to establish beyond a reasonable doubt that the defendant intended to have sexual intercourse with [Miller], again, as defined in the statute, on meeting her in Naugatuck. . . .

"Conduct of a defendant who for purposes of ultimately having sexual intercourse as defined in the statute with a person whom they suspect to be a child and they travel to a prearranged location to meet that child that

On appeal, the defendant asserts that the record contains insufficient evidence to support the court's conclusion that he possessed the intent required for conviction of attempt to commit sexual assault in the second degree and that he took a substantial step in furtherance of committing this crime. We are not persuaded.

We begin our analysis by setting forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in

is sufficient to establish beyond a reasonable doubt a substantial step in the furtherance of the planned sex crime as defined."

part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Shah*, 134 Conn. App. 581, 587–88, 39 A.3d 1165 (2012).

"[S]exual assault in the second degree is a general intent crime that requires only that the actor possess a general intent to perform the acts that constitute the elements of the offense. . . . Thus, under § 53a-71 (a) (1) . . . the state must prove only that the accused knowingly engaged in sexual intercourse with a person who, in fact, had not attained the age of sixteen." (Internal quotation marks omitted.) *State* v. *Nero*, 122 Conn. App. 763, 776, 1 A.3d 184 (2010); see also General Statutes § 53a-71. "Under § 53-49 (a), [a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." (Internal quotation marks omitted.) *State* v. *Nero*, supra, 777. "It is well established that [t]he question of intent is purely a question of fact. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment . . . a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the [finder of fact] to decide." (Internal quotation marks omitted.) *State* v. *Shah*, supra, 134 Conn. App. 591.

I

The defendant first argues that this court should look to his direct statements of actual intent. According to

the defendant, the evidence contained in the record indicates that on the date of his arrest he intended only to kiss Miller. In support of this argument, the defendant points to the conversation in which he told Miller explicitly "no [sex though] . . . [I'll] give [you] anything [you] want besides that." We are not persuaded.

"[A]n outright declaration of intent is not required in order to sustain the defendant's conviction." *State* v. *Shah*, supra, 134 Conn. App. 591. Although the defendant can point to a single statement in which he explicitly states he will not have sex with Miller, this does not foreclose the possibility that he intended to engage in other acts of a sexual nature with Miller. The court reasonably could have inferred from the context of this statement that the defendant was referring solely to penile-vaginal intercourse. Indeed, when previously referring to "sex," the defendant stated that he did not like wearing condoms, but would do so to assuage Miller's expressed fears of becoming pregnant. See footnote 2 of this opinion. By contrast, the defendant continually and clearly expressed his desire to perform cunnilingus on Miller without reservation or restriction. General Statutes § 53a-65 provides, for the purposes of the offense charged, that "sexual intercourse" includes cunnilingus. Accordingly, the court reasonably could have inferred that the defendant did intend to engage in sexual intercourse with Miller.

The defendant further asserts that he lacked the requisite intent because his online conversations with Miller were nothing more than idle talk. The evidence in the record belies this assertion. The state presented evidence that the defendant had engaged in and initiated a series of sexually explicit conversations with Miller in which he specifically and repeatedly expressed his desire to perform cunnilingus, an act in which Miller

was willing to engage.[6] Additionally, the defendant began planning a meeting with Miller on the first day they began communicating after she consented to this act. In fact, the defendant drove to the prearranged location to meet Miller a mere five days after their first conversation and planned to take her to her home where the two would have privacy for approximately seven hours, while ensuring that his entry and exit would be unobserved by Miller's mother and neighbors. During this first meeting, the defendant stated that he hoped that Miller would use the sex toys he provided while he observed and that he would like to remove Miller's underwear and intended to kiss her on the hip below the strap of her panties. The police seized several sex toys, matching those described by the defendant during his conversations with Miller, from the defendant's car at the time of his arrest. In light of the graphic, sexual conversations and the defendant's aforementioned conduct, the court could reasonably have inferred that the defendant intended to engage in sexual intercourse with Miller on the date he was arrested. We, therefore, conclude that the evidence viewed in the light most favorable to sustaining the verdict was sufficient to support the court's conclusion that the defendant possessed requisite intent.

II

The defendant finally argues that the record contained insufficient evidence to support the court's conclusion that he took a substantial step in furtherance of the crime. We are not persuaded.

"[A] substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime, and thus the finder of fact may give weight

---

[6] In response to the defendant's first inquiry regarding Miller's willingness to engage in cunnilingus, she responded "that [would] be so nice."

to that which has already been done as well as that which remains to be accomplished before the commission of the substantive crime. . . . In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in the context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." (Internal quotation marks omitted.) *State* v. *Shah*, supra, 134 Conn. App. 589. This court previously has held, consistent with our Supreme Court's holding in *State* v. *Sorabella*, 277 Conn. 155, 182, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006), that "the conduct of a suspect who, for the purpose ultimately of having sex with a person whom the suspect believes to be a child, travels to a prearranged location to meet that child, is sufficient to constitute a substantial step in furtherance of the planned sex crime." (Internal quotation marks omitted.) *State* v. *Shah*, supra, 590; see also *State* v. *Nero*, supra, 122 Conn. App. 783.

In the present case, the defendant engaged in a series of explicit Internet conversations with an individual whom he believed to be a fourteen year old girl. The defendant suggested meeting in person on the first day he began communicating with Miller and arranged to spend several hours with Miller at her residence, which he ensured would be private and that his entry to and exit therefrom would remain unobserved. The defendant then traveled to the prearranged location, a mere five days after his initial conversation with Miller, with the intent of meeting her. From the aforementioned conduct, the court reasonably could have found that the defendant intended to engage in sexual intercourse with Miller and that he drove to the prearranged location for that illicit purpose. See *State* v. *Nero*, supra,

122 Conn. App. 783 (travel for purpose of having sex is substantial step). We conclude that these facts, viewed in the light most favorable to sustaining the verdict, were sufficient to constitute a "substantial step." Accordingly, the defendant's claim of insufficiency relating to his conviction of attempt to commit sexual assault in the second degree must fail.

The judgment is affirmed.

In this opinion the other judges concurred.